NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RACHELLE H. and DEREK H., ) | |
| ) | Supreme Court Nos. S-17303/17586/ |
| Appellants, ) | 17646 (Consolidated) |
| ) | |
| v. ) | Superior Court Nos. 3PA-18-00040/ |
| ) | 00041/00042 CN |
| STATE OF ALASKA, DEPARTMENT ) | |
| OF HEALTH & SOCIAL SERVICES, ) | MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES, ) | AND JUDGMENT[*] |
| ) | |
| Appellee. ) | No. 1781 – July 22, 2020 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White and Jonathan A. Woodman, Judges.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant Rachelle H. Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant Derek H. Laura E. Wolff, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

---

[*] Entered under Alaska Appellate Rule 214.

# I.  INTRODUCTION

Parents challenge the trial court's decisions terminating their parental rights to their child.  The mother also challenges a pre-termination placement decision.  Because the evidence supports the court's findings and the court correctly applied relevant law, we affirm the parental rights termination.  And because the court did not abuse its discretion when it approved the pre-termination placement decision, we affirm it as well.

# II.  BACKGROUND

Rachelle H. and Derek H. have a daughter, Blake, born in 2017.[1]  Blake falls within the definition of an "Indian child"[2] under the Indian Child Welfare Act of 1978 (ICWA).[3]  The Office of Children's Services (OCS) filed a non-emergency petition to adjudicate Blake a child in need of aid in early 2018, when Blake was five months old, but its involvement with Rachelle and her two older children dates to 2013.  Given the nature of this appeal we do not need to detail OCS's history with this family, but after unsuccessful reunification efforts OCS petitioned to terminate Rachelle's and Derek's parental rights.

---

[1]     Pseudonyms are used for all family members.

[2]     *See* 25 U.S.C. § 1903(4) (2018) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").  Blake is an Indian child because Derek is affiliated with the Knik Tribe.

[3]     *Id.* §§ 1901-1963.  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." *Id.* § 1902.

The standards for terminating parental rights are provided in Alaska Child in Need of Aid (CINA) Rule 18, governed by Alaska Statutes but also, in the case of an Indian child, by federal ICWA requirements.[4] After a termination trial in February 2019, the trial court determined that OCS met its burden of proof for terminating parental rights.[5]

We consolidated three appeals brought by the parents. Rachelle first challenged the trial court's approval of OCS's placement decision for Blake before the termination trial. After the trial court terminated Rachelle's and Derek's parental rights, they each separately appealed the trial court's termination finding that Blake was a child in need of aid due to their substance use, contending there was no evidence their substance use placed her at substantial risk of harm. In the termination appeal, Rachelle

---

[4]    CINA Rule 18 (referencing requirements in AS 47.10.011, AS 47.10.080, and AS 47.10.086; and providing, in the case of Indian children, protocols that comport with ICWA, 25 U.S.C. § 1912(d), (f)).

[5]    Under ICWA and relevant CINA statutes and rules, parental rights to an Indian child may be terminated at trial only if OCS shows:

(1) by clear and convincing evidence that:  (a) the child has been subjected to conduct or conditions enumerated in AS 47.10.011, CINA Rule 18(c)(1)(A); (b) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent, CINA Rule 18(c)(1)(A)(i)-(ii); and (c) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, CINA Rule 18(c)(2)(B);

(2) beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child, CINA Rule 18(c)(4); and

(3) by a preponderance of the evidence that the child's best interests would be served by termination of parental rights, CINA Rule 18(c)(3).

also challenged the trial court's ICWA-required termination finding that her continued custody of Blake was likely to result in Blake's serious emotional or physical damage. Derek also challenged the court's ICWA-required termination finding that OCS made active efforts to prevent his family's break up.

## III.   STANDARD OF REVIEW

In a case involving parental rights termination we review a trial court's findings of fact for clear error.[6]  Findings are clearly erroneous only if, after reviewing the record in the light most favorable to the prevailing party, we are left with a "definite and firm conviction that a mistake has been made."[7]  When reviewing factual findings "we ordinarily will not overturn a trial court's finding based on conflicting evidence,"[8] and we will not reweigh evidence "when the record provides clear support for the trial court's ruling."[9]  It "is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[10]

Whether the trial court's factual findings satisfy the requirements of the CINA and ICWA statutes, including whether expert testimony sufficiently supported the

---

[6]     *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003).

[7]     *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

[8]     *Martin N.*, 79 P.3d at 53 (citing *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

[9]     *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

[10]     *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

trial court's determinations,[11] is a question of law.[12] We review questions of law de novo.[13]

## IV.    DISCUSSION

### A.    CINA Finding Regarding Substantial Risk Of Harm; ICWA Finding Regarding Serious Emotional Or Physical Injury

The trial court found Blake to be a child in need of aid because both Rachelle's and Derek's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."[14] Rachelle and Derek contend there was no evidence that their substance use harmed Blake or was connected to her lack of well-being. But AS 47.10.011(10) does not require evidence that a child actually suffered harm, only that there is "a substantial risk of harm." We repeatedly have acknowledged that the CINA statutes "contemplate[] an analysis of future harm" and that OCS "is not required to wait to intervene until a child has suffered actual harm."[15]

---

[11]    *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 989 (Alaska 2002).

[12]    *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000); *D.H. v. State, Dep't of Health & Soc. Servs.*, 929 P.2d 650, 654 n.11 (Alaska 1996).

[13]    *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 259 (Alaska 1999).

[14]    AS 47.10.011(10).

[15]    *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 532 (Alaska 2013) (first quoting *Winston J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 134 P.3d 343, 348 (Alaska 2006); then quoting *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 54 (Alaska 2003)).

Evidence supporting a trial court's CINA finding may include a parent's post-removal substance use and a parent's factual stipulation for CINA adjudication purposes.[16]

ICWA imposes an additional requirement for terminating parental rights to an Indian child. Parental rights may not be terminated absent "a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[17] Rachelle contends there is insufficient evidence to support such a determination in this case. Serious harm to the child may be established "through the testimony of a single expert witness, by aggregating the testimony of expert witnesses, or by aggregating the testimony of expert and lay witnesses."[18]

The evidence presented at trial supports both findings. Rachelle and Derek stipulated at an earlier adjudication hearing that Blake was a child in need of aid under AS 47.10.011(10) (parental substance abuse), and neither argues on appeal that the trial court erred by relying on that fact. Both admitted in their substance abuse assessments

---

**16** *See Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1259 (Alaska 2010) ("Evidence was presented that [the mother] was in and out of substance abuse programs. Such conduct adequately demonstrates an impairment of parenting and a risk of harm to or neglect of [the child]. Together with [the mother's] stipulation that [the child] was a child in need of aid under this subsection, the conduct supports the superior court's finding that [the child] was in need of aid.").

**17** 25 U.S.C. § 1912(f) (2018).

**18** *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1270 (Alaska 2014) (quoting *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000)).

that "drug use has hurt [their] ability to be a good parent."[19] And there can be no dispute that they were unable to overcome their substance abuse. OCS's first case plan activity was that Rachelle and Derek follow treatment recommendations. But both were discharged from outpatient treatment for nonattendance, resulting in their recommendations being upgraded to treatment at a residential facility. OCS made referrals for residential treatment programs, but neither Rachelle nor Derek completed treatment. The second case plan activity for both was submitting to urinalysis (UA) testing. Derek had only one clean UA test. The last UA test either parent completed was in December 2018, two months prior to the termination trial, and the results were positive for opiates and methamphetamine. Rachelle testified that her struggle with addiction had "been a pretty rough 10 years." And Derek did not dispute testimony that he and Rachelle "weren't engaged in treatment, they weren't regularly attending UAs, and they didn't have peer support."

At the termination trial, a licensed clinical social worker testified as an expert on child welfare, identifying the parents' "long-term pattern of . . . polysubstance abuse" as her primary concern, because "parents who are substance abusing . . . are unable to provide for . . . that child's needs in a way that is safe and nurturing and allows for healthy child development." The expert witness testified that substance-abusing parents generally are unable to meet a child's *emotional* needs, resulting in long-term neurological damage. This aspect of the expert witness's testimony ultimately formed the basis of the court's ICWA-required finding. Reviewed as a whole, the expert witness's unchallenged testimony combined with other testimony and documentary

---

[19] The court clarified that the evidentiary exception for "statements made for purposes of treatment or diagnosis or the parents' statements" applied. *See* Alaska R. Evid. 801(d)(2), 803(4). No objection was made to the exhibits.

evidence of the parents' substance abuse was more than enough to satisfy ICWA's likely harm standard.

Even assuming the lack of an established "causal connection," the court could infer harm from Rachelle's and Derek's unstable living situation at the time of trial and their ongoing addictions. Rachelle argues that Bureau of Indian Affairs (BIA) regulations prohibit the court from relying on "substance abuse alone . . . *and* lack of conventional housing" to support a termination order. (Emphasis in original.) But her argument misstates the regulations, which provide a disjunctive list; in other words, "evidence that shows *only* the existence of . . . inadequate housing . . . *by itself*" or "substance abuse . . . *by itself*" would be inadequate.[20] The 2016 BIA Guidelines confirm this reading.[21] And there was ample and uncontroverted evidence of *both* in this case. The court thus could infer that returning Blake to Rachelle and Derek while they were homeless *and* addicted to multiple controlled substances would result in substantial harm.[22]

---

[20] 25 C.F.R. § 23.121(d) (2019) (emphasis added).

[21] BUREAU OF INDIAN AFFAIRS, U.S. DEP'T OF THE INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT § G.1, at 53 (2016) (hereinafter BIA GUIDELINES) ("The rule prohibits relying on *any one* of the factors listed in paragraph (d), *absent the causal connection* identified in (c), *as the sole basis* . . . ." (emphasis in original)).

[22] Both parents correctly challenge the trial court's statements about the family's instability prior to Blake's removal. As they point out, no evidence was presented at the termination trial about the family's pre-removal situation, and evidence from earlier hearings about the family's alleged instability was not incorporated into the trial evidence. Quoting the BIA Guidelines, Rachelle argues that reliance on evidence demonstrating that the parents often left Blake with family members for extended time periods would be problematic "given that 'one of the factors leading to the passage of ICWA was the failure of non-Indian child welfare workers to understand the role of the

(continued...)

## B. Active Efforts

The trial court also is required to find "that *active efforts* have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."[23] Active efforts must be shown by clear and convincing evidence.[24]

Derek appeals the trial court's finding that OCS made active efforts to prevent his family's breakup. We have described active efforts as not just developing a case plan but "tak[ing] the [parent] through the steps of the plan for reunification of the family."[25] We review OCS's involvement "in its entirety" rather than piecemeal, and "a court may consider 'a parent's demonstrated lack of willingness to participate in treatment.' "[26] Derek challenges only one detail of OCS's efforts, relying on a 2016 BIA regulation to support his argument that OCS's referrals for rehabilitative services were insufficient. The cited regulation defines "active efforts" as meaning that services must

---

[22]    (...continued)
extended family in Indian society.' " *Id.* § H.2, at 57-58. But the trial court's stray statement about prior "instability" and Blake having "lived with various family members at different periods of time" was not a necessary part of its findings, and we conclude that the evidence about the parents' current homelessness actually presented at trial is sufficient to support that Blake was at substantial risk of harm.

[23]    25 U.S.C. § 1912(d) (emphasis added). *Compare id.* (requiring active efforts), *with* AS 47.10.086 (requiring reasonable efforts).

[24]    CINA Rule 18(c)(2)(B).

[25]    *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010).

[26]    *Id.* (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268 (Alaska 2008)).

"be tailored to the facts and circumstances of the case."[27] The non-exhaustive list of examples provided includes "[c]onsidering alternative ways to address the needs of the Indian child's parents . . . if the optimum services do not exist or are not available."[28]

As noted above, Derek was discharged from outpatient treatment for nonattendance. OCS made referrals for residential treatment programs, but he did not complete treatment. Derek had numerous positive UA tests and no-shows; he had only one clean UA test. The trial court was not required to ignore Derek's "lack of willingness to participate in treatment."[29] The record as a whole confirms OCS's active efforts and that the primary barrier to reunification was both parents' inability to change; they consistently put their own addictions ahead of Blake's needs.

### C. Placement

OCS and the parents were unable to agree on Blake's placement, and a contested placement hearing was held over three days in October and November 2018.[30]

---

[27] 25 C.F.R. § 23.2.

[28] *Id.* § 23.2(10).

[29] *Bill S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 436 P.3d 976, 983 n.26 (Alaska 2019) (" '[A] parent's demonstrated lack of willingness to participate in treatment may be considered in determining whether the state has taken active efforts.' . . . And '[i]f a parent has a long history of refusing treatment and continues to refuse treatment, OCS is not required to keep up its active efforts once it is clear that these efforts would be futile.' " (quoting *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432-33 (Alaska 2015) (first and third alterations in original))).

[30] *See* AS 47.10.080(s) ("The department may transfer a child, in the child's best interests, from one placement setting to another . . . . A party opposed to the proposed transfer may request a hearing and must prove by clear and convincing evidence that the transfer would be contrary to the best interests of the child for the court to deny the transfer.").

OCS wanted Blake placed with her paternal grandparents so she could be with her half-siblings; the parents and the guardian ad litem wanted Blake placed with her aunt, with whom Blake had the longest bond. The Tribe indicated its placement preference was with the paternal grandparents, ultimately submitting a resolution to that effect. Either placement would have been a first-tier ICWA placement.[31] The trial court concluded that OCS had not abused its discretion by deciding to place Blake with her paternal grandparents and that the placement was ICWA-compliant; the court gave "great deference" to the Tribe's placement resolution identifying the paternal grandparents as "the most culturally and socially appropriate" placement.

Rachelle appeals the trial court's approval of OCS's placement decision. Placement decisions are final judgments that may be appealed, and we generally consider a placement appeal separately from a termination appeal.[32] We have questioned, but not decided, whether a parent whose parental rights have been terminated (and whose termination appeal is unsuccessful) still has standing to challenge a prior placement decision.[33] We do not decide that question in this case; assuming Rachelle's standing, we see no reason to set aside the court's pre-termination placement decision.[34]

---

[31]    *See* 25 U.S.C. § 1915(b)(i) (granting preference in foster care placement of Indian child under ICWA to "a member of the Indian child's extended family").

[32]    *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1244 (Alaska 2015).

[33]    *Id.*

[34]    The trial court's determination of a good-cause deviation from ICWA placement preferences is reviewed for abuse of discretion. *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 430 (Alaska 2012). Rachelle does not suggest that the trial court's decision *declining* to find good cause should be reviewed under any other standard. Indeed, the BIA Guidelines confirm that,

(continued...)

ICWA's placement preference order lists all "member[s] of the Indian child's extended family" in the top tier, although the court may depart from the established order for "good cause."[35] The Indian child's tribe also may "establish a different order of preference by resolution," and if the resolution "is the least restrictive setting appropriate to the particular needs of the child," then "the agency or court effecting the placement shall follow such order."[36]

Rachelle argues that the trial court should have deviated from the Tribe's placement resolution because it violated other ICWA placement criteria. She first contends that the paternal grandparents' home did not "most approximat[e] a family"[37] and that Blake "would, most likely, be in day-care and or night-care, alone, for many years to come." But the court found none of the testimony Rachelle now relies on credible, noting instead that "[t]here is no evidence that [the grandparents] have any plans to relocate outside of this community" and that both grandparents were "fit foster/pre-adoptive placements." As OCS points out, we give "particular deference to

---

**34** (...continued)
even assuming the evidentiary burden has been met, the ultimate decision whether to adhere to or deviate from the established placement preferences is left to the court's sound discretion. *See* BIA GUIDELINES, *supra* note 21, § H.4, at 61 ("The court retains the discretion to find that good cause does not exist . . . even where one or more of the listed factors for good cause is present.").

**35** 25 U.S.C. § 1915(b)(i); *see also* 25 C.F.R. § 23.132(b), (c)(1) (providing guidance).

**36** 25 U.S.C. § 1915(c); AS 47.14.100(e).

**37** *See* 25 U.S.C. § 1915(b); AS 47.14.100(e).

the trial court's findings when . . . they are based primarily on oral testimony,"[38] and we avoid "reweigh[ing] evidence when the record provides clear support."[39]

Rachelle also argues that the trial court failed to "incorporate [the parents'] preferences into its analysis." She relies on 25 U.S.C. § 1915(c), providing that if the Tribe has enacted a placement preference resolution, "[when] appropriate, the preference of the Indian child or parent shall be considered."[40] She concedes that "the court is not required to follow the parents' preference," but she maintains that "it *must* consider it" and that the court's failure to explicitly do so "was improper and a fatal error." (Emphasis in original.) But the trial court directly responded to this argument in its later oral termination findings, stating that it "did listen carefully" and that its approval of the placement change "doesn't mean that [the parents'] preferences were not heard and were not seriously considered."

We see no error or abuse of discretion in the trial court's decision to follow the Tribe's placement preference.

## V. CONCLUSION

We AFFIRM the trial court's parental rights termination and its earlier placement decision.

---

[38] *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007).

[39] *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008).

[40] *See also* AS 47.14.100(e).